TANYA MARIE GRAY,

        Plaintiff,

v.                                   Case No:  6:18-cv-1014-Orl-LRH

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

# MEMORANDUM OF DECISION

Tanya Gray (Claimant) appeals the Commissioner of Social Security's (Commissioner) final decision denying her application for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 21 at 22-29, 36-38, 42). The Commissioner argues that the Administrative Law Judge (ALJ) committed no legal error and that her decision is supported by substantial evidence and should be affirmed. (*Id*. at 30-36, 38-42). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.

## I.    Procedural History

This case stems from the Claimant's application for disability insurance benefits. (R. 386-87). The Claimant alleged a disability onset date of October 10, 2014. (R. 386). The Claimant's application was denied on initial review and on reconsideration. The matter then proceeded to a hearing before an ALJ. On January 4, 2018, the ALJ entered a decision denying the Claimant's application for disability benefits. (R. 23-33). The Claimant requested review of the ALJ's

decision, but the Appeals Council denied her request for review. (R. 1-4). This appeal followed.

## II. The ALJ's Decision

The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. First, the ALJ determined that the Claimant had engaged in substantial gainful activity. Second, the ALJ found that the Claimant suffered from the following severe impairments: Sjogren's syndrome;[1] fibromyalgia; periarthritis of the right shoulder; pulmonary fibrosis; and asthma, as well as the non-severe impairment of sinusitis. (R. 26). Third, the ALJ determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment. (R. 26-27).

Fourth, the ALJ found that the Claimant has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b)[2] with the following additional limitations:

> She can push and pull the same weights as she can lift and carry occasionally; and can reach overhead with the right arm occasionally and frequently in all other directions. She can frequently handle, finger, and feel. She can occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and can frequently balance. She can occasionally stoop, kneel, crouch and crawl. She is limited to occasional exposure to unprotected heights; moving mechanical parts; humidity/wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibrating surfaces and tools. She needs regular and customary work breaks every 2 hours.

---

[1] Sjogren's syndrome "is a disorder of [the] immune system identified by its two most common symptoms – dry eyes and a dry mouth." Mayo Clinic, *Sjogren's syndrome*, https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-203532 16 (last visited August 20, 2019).

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

(R. 27). The ALJ also found that the Claimant's RFC allowed her to perform her past relevant work as a "printed circuit board assembler hand." (R. 32). Because the ALJ determined that the Claimant had the RFC to perform her past relevant work, the ALJ did not proceed to the fifth and final step of the evaluation process. Rather, the ALJ concluded that the Claimant was not disabled between her alleged onset date, October 10, 2014, through the date of the ALJ's decision, January 4, 2018. (*Id*.).

## III.   Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   Analysis

The Claimant raises two assignments of error: 1) the ALJ's decision to assign Dr. Hector Ramirez's, Dr. Raymond Baez's, and Dr. Paul Lombardi D.C.'s opinions little weight was not

supported by substantial evidence; and 2) the ALJ erred in finding the Claimant's testimony concerning her pain and limitations not entirely credible. (Doc. 21 at 22-29, 36-38). The Court will address each assignment of error in turn.

### A. The Opinion Evidence

The Claimant's first assignment of error focuses on the weight the ALJ assigned to Dr. Baez's, Dr. Ramirez's, and Dr. Lombardi's opinions. (Doc. 21 at 22-29). The Court finds this assignment of error unavailing.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources, as well as the opinions of other sources. *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. There is good cause to assign a treating physician's opinion less than controlling weight

where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179.

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Id*. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id*.

### 1. Dr. Baez

The Claimant argues that each of the ALJ's reasons for assigning little weight to Dr. Baez's opinions are not supported by substantial evidence. (Doc. 21 at 23-24). The Commissioner, on the other hand, argues that the ALJ's decision with respect to Dr. Baez's opinions is supported by substantial evidence. (*Id*. at 31-33).

The Claimant began treating with Dr. Baez, a primary care physician, sometime prior to the alleged disability onset date. (*See* R. 564-65). The record, however, does not contain any treatment records from Dr. Baez dated between the alleged disability onset date, October 10, 2014, through the date of Dr. Baez's first opinion during the relevant period, January 30, 2015. In that opinion, Dr. Baez simply opined that the Claimant is "currently unable to work due to her medical conditions," which, at that time, included Sjogren's syndrome, dyspnea,[3] pulmonary fibrosis, and chronic back pain. (R. 503).

On March 6, 2015, Dr. Baez completed a questionnaire regarding the functional limitations caused by the Claimant's impairments. (R. 530-33). Dr. Baez opined that the Claimant has a

---

[3] Dyspnea is defined as "difficult or labored respiration." Meriam-Webster, *dyspnea*, https://www.merriam-webster.com/dictionary/dyspnea (last visited August 20, 2019).

limited ability to lift and carry objects, but he did not specify how much weight the Claimant could lift and carry. (R. 530-31). Dr. Baez also opined that the Claimant can sit for no more than one hour in an eight-hour workday; stand for no more than one hour in an eight-hour workday; walk for no more than one hour in an eight-hour workday; never climb, crouch, or crawl; occasionally kneel; frequently balance and stoop; and is limited in her ability to reach, push, and pull.[4] (R. 531-32). Dr. Baez attributed the foregoing limitations to the Claimant's joint pain. (R. 530-33).

The Claimant continued to treat with Dr. Baez following his March 6, 2015 opinion. (R. 830-908). For a period of nearly two years, the Claimant only reported muscle and joint pain on a few occasions, (R. 866, 887, 903, 907), and her physical examinations were routinely unremarkable. (R. 835, 840-41, 845-46, 850-51, 856, 861, 867, 877, 883, 887, 892, 896. 900, 904, 907-08).[5]

On July 24, 2017, Dr. Baez completed a second questionnaire regarding the functional limitations caused by the Claimant's impairments. (R. 1044-46). Dr. Baez opined that the Claimant can frequently lift and carry no more than 5 pounds; sit for no more than one hour in an eight-hour workday; stand for no more than one hour in an eight-hour workday; walk for no more than one hour in an eight-hour workday; never crouch, kneel, or crawl; occasionally climb, balance, and stoop; and is limited in her ability to reach, push, and pull.[6] (R. 1044-45). Dr. Baez attributed the foregoing limitations to the Claimant's Sjogren's syndrome and fibromyalgia. (*Id.*).

--------

[4] Dr. Baez did not specify the extent of the Claimant's limited ability to reach, push, and pull. (*See* R. 532).

[5] Dr. Baez only listed three abnormal examination findings during this time period, which consisted of a single observation of muscle tenderness on April 23, 2015, (R. 907), a single observation of nasal discharge on August 6, 2015, (R. 900), and a single observation of a nasal ulcer on October 1, 2015. (R. 892).

[6] Dr. Baez again did not specify the extent of the Claimant's limited ability to reach, push, and pull. (*See* R. 1045).

The ALJ considered each of Dr. Baez's opinions and collectively assigned them little weight for the following reasons:

> They are not supported by the claimant's subjective statements to providers, which noted generally improved and mild pain with treatment. They are also inconsistent with the objective clinical signs and findings, showing generally controlled inflammatory markers and only mild tenderness and limited bending of the back and neck, but intact range of motion, strength, gait, and function on examination. (*see* Exs. 5F, 14F, 17F, 20F, 26F, 30F).

(R. 31).

The ALJ's first reason for assigning little weight to Dr. Baez's opinions focuses on the inconsistency between the Claimant's reports of pain and Dr. Baez's opinions. (R. 31). This reason, if supported by substantial evidence, is good cause to assign Dr. Baez's opinions less than controlling weight. *Winschel*, 631 F.3d at 1179. The Claimant, however, argues that the ALJ "mischaracterized" the record as showing that her pain improved over time. (Doc. 21 at 24). The Claimant points to Dr. Baez's opinions, his referral of the Claimant to the Cleveland Clinic, and an opinion from the Claimant's physical therapist, Antonio Lanza, as evidence that her pain did not improve over time. (*Id*. at 24-25 (citing R. 503, 505, 531-32, 830)).

The ALJ did not "mischaracterize" the record. While the Claimant did report pain in her muscles and joints at various points throughout the relevant period, there is, as the ALJ notes, evidence that the Claimant experienced some improvement in her level of pain. For example, during a nearly two-year period, in which the Claimant treated with Dr. Baez on sixteen occasions, the Claimant only reported muscle or joint pain on four occasions. (R. 866, 887, 903, 907). Similarly, during a nearly one-year period, in which the Claimant treated with Dr. Lombardi on six occasions, the Claimant's reports of neck, middle, and lower back pain dropped from highs of 5-8 on a scale of 0-10, with ten being the most severe, to 0-1 by the end of the year-long period. (R. 1057-62). The foregoing evidence can reasonably be viewed as being inconsistent with Dr. Baez's

extreme limitations, which he attributed to the Claimant's pain, Sjogren's syndrome, and fibromyalgia. Thus, the ALJ's first reason for assigning little weight to Dr. Baez's opinions is supported by substantial evidence.

Further, the Claimant's reliance on opinion evidence to challenge the ALJ's first reason misses the point. The opinion evidence – which includes two opinions from Dr. Baez and one opinion from a physical therapist – does not speak to the longitudinal history of the Claimant's subjective reports of pain. The treatment records considered by the ALJ, though, do provide a longitudinal history of the Claimant's subjective reports of pain, and those records support the ALJ's rationale. Further, the Claimant's argument that the Court should ignore the treatment records and instead focus on these three opinions essentially invites the Court to reweigh the evidence and substitute its judgment for that of the ALJ. This the Court cannot do because, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm the decision if it is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. Since the ALJ's first reason is supported by substantial evidence, it must be affirmed.

The ALJ's second reason for assigning little weight to Dr. Baez's opinions focuses on the inconsistency between certain objective medical evidence – controlled inflammatory markers and normal range of motion, strength, and gait – and Dr. Baez's opinions. (R. 31). This reason, if supported by substantial evidence, is good cause to assign Dr. Baez's opinions less than controlling weight. *Winschel*, 631 F.3d at 1179. The Claimant challenges the ALJ's second reason by arguing that the ALJ's reliance on objective medical evidence does not account for the waxing and waning nature of fibromyalgia symptoms. (Doc. 21 at 25 (citing SSR 12-2p, 2012 WL 3104869 (July 25, 2012)). Consequently, the Claimant implicitly suggests that the ALJ's second reason is not supported by substantial evidence.

The Claimant misstates the ALJ's decision. In fact, the ALJ did consider the waxing and waning nature of the Claimant's impairments, stating

> Although the undersigned has considered the nature of [the Claimants] impairments having "good days" and "bad days," or pain flares, even her reports to providers during the flares suggest significant retained function, consistent with light exertional capacity.

(R. 30). Thus, this is not a situation in which the ALJ failed to account for the nature of the Claimant's impairments, including her fibromyalgia. Instead, the ALJ properly considered those characteristics. *See* SSR 12-2p, 2012 WL 3104869 at *6 ("For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"). Further, the ALJ's second reason does not suggest that she later overlooked the waxing and waning of the pain associated fibromyalgia when weighing Dr. Baez's opinions. Instead, the ALJ explained why the objective medical evidence did not support Dr. Baez's extreme limitations, which he associated with Claimant's pain, Sjogren's syndrome, and fibromyalgia. As the ALJ noted, there is evidence that the Claimant's inflammatory markers were controlled (*See, e.g.*, R. 948-52, 1040-43) and, while she experienced mild tenderness and limited range of motion in her neck and back, she also exhibited normal strength, gait, and range of motion elsewhere in her body (*See, e.g.*, R. 686-87, 691-92, 696, 700-01, 705-06, 709-10, 714, 717, 835, 840-41, 845-46, 850-51, 856, 861, 867, 877, 883, 887, 892, 896, 900, 904, 907-08). The foregoing evidence can reasonably be viewed as being inconsistent with Dr. Baez's opinions. Thus, the ALJ's second reason for assigning little weight to Dr. Baez's opinions is supported by substantial evidence.

In summary, the Court finds that the ALJ stated good cause supported by substantial evidence to assign little weight to Dr. Baez's opinions.

## 2. Dr. Ramirez

The Claimant argues that one of the ALJ's two reasons for assigning little weight to Dr. Ramirez's opinion is not supported by substantial evidence. (Doc. 21 at 23-24). The Commissioner, on the other hand, argues that the ALJ's decision with respect to Dr. Ramirez's opinion is supported by substantial evidence. (*Id*. at 33).

The Claimant began treating with Dr. Ramirez, a rheumatologist, in April 2017. (R. 570-73). The Claimant presented at her initial evaluation complaining of pain in all her joints, chronic lower back pain, pain in her right shoulder, pain in her feet, and tingling in her hands. (R. 572). Dr. Ramirez noted that recent radiological examinations of her back were essentially unremarkable. (*Id*.). On examination, Dr. Ramirez observed the following: mild tenderness during palpation of the right shoulder; mild paraspinal muscle tenderness in the cervical, thoracic, and lumbar spines; and limited range of motion in the cervical, thoracic, and lumbar spines.[7] (*Id*.). All other aspects of the examination were unremarkable. (R. 572-73). Dr. Ramirez assessed the Claimant with pain in multiple joints, which he believed could be caused by her mild osteoarthritis; Sjogren's syndrome; chronic neck pain with no radiculopathy;[8] and chronic lower back pain with no radiculopathy. (R. 573).

The Claimant continued to treat with Dr. Ramirez. (R. 633-37, 697-718). Between the initial evaluation and July 2016, the Claimant's subjective complaints and examination findings

---

[7] Dr. Ramirez did not explain how much range of motion the Claimant had in her cervical, thoracic, and lumbar spines. (*See* R. 572).

[8] Radiculopathy is defined as an "irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root." Meriam-Webster, *radiculopathy*, https://www.merriam-webster.com/dictionary/radiculopathy (last visited August 20, 2019).

remained largely unchanged. (*Id.*). The only notable changes in the Claimant's examinations were observations of multiple trigger points[9] (R. 696, 701, 706, 710, 714) and chest wall pain (R. 696). In addition, Dr. Ramirez's assessments remained largely consistent with his original assessments. (R. 633-37, 697-718).

On July 18, 2016, Dr. Ramirez completed a "Return to Work/School" form, in which he opined that Claimant "is in need of a POV/scooter [due] to arthritic condition." (R. 681). The form did not otherwise explain why the Claimant required a scooter, or the extent of her arthritic condition. (*Id.*).

The Claimant continued to treat with Dr. Ramirez through May 2017. (R. 683-97, 948-52, 1040-43). During this period, the Claimant's subjective complaints and examination findings remained largely unchanged. (*Id.*). In addition, Dr. Ramirez's assessments remained largely consistent with his original assessments, with the notable addition of fibromyalgia. (*Id.*).

The ALJ considered Dr. Ramirez's opinion and assigned it little weight because: 1) Dr. Ramirez gave "no support" for his opinion; and 2) his opinion was "inconsistent with the claimant's clinical signs of normal lower extremities and normal gait[.]" (R. 31). The Claimant only challenges the ALJ's second reason for assigning little weight to Dr. Ramirez's opinion. (Doc. 21 at 23-24).[10]

---

[9] Trigger point is defined as "a localized usually tender or painful area of the body and especially of a muscle that when stimulated gives rise to pain elsewhere in the body." Meriam-Webster, *trigger point*, https://www.merriam-webster.com/dictionary/trigger%20point (last visited August 20, 2019).

[10] The failure to raise any argument challenging the ALJ's first reason results in a waiver of any such argument to that reason. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing to consider an argument that the claimant failed to raise before the district court).

With respect to her second reason, the ALJ focused on the inconsistency between Dr. Ramirez's routine findings of normal lower extremities and normal gait and his opinion that the Claimant required a POV/scooter. (R. 31). This reason, if supported by substantial evidence, is good cause to assign Dr. Ramirez's opinion less than controlling weight. *Winschel*, 631 F.3d at 1179. The Claimant argues that Dr. Ramirez's records are not inconsistent with his opinion, pointing to Dr. Ramirez's diagnosis of fibromyalgia with widespread muscle pain. (Doc. 21 at 23 (citing R. 1043)). Further, the Claimant points to her own reports of difficulty with prolonged standing and walking, and the need for a scooter because she tires easily. (*Id*. at 23-24 (citing R. 264, 268)).

Dr. Ramirez's examinations did, as the ALJ noted, routinely reveal normal lower extremities – *i.e.*, normal muscle strength, no tenderness or swelling in the lower extremities, and full range of motion in the lower extremities – and normal gate, which could be reasonably viewed as inconsistent with the need for a scooter due to an "arthritic condition." (R. 572-73, 637, 687, 691-92, 696, 701, 705-06, 710, 952, 1043). This inconsistency is further amplified when it is considered that Dr. Ramirez found this "arthritic condition" to be mild and failed to specify whether it affected the Claimant's lower extremities. Thus, the ALJ's second reason is supported by substantial evidence.

The Claimant attempts to show that the ALJ erred in finding an inconsistency between the treating records and Dr. Ramirez's opinion by pointing to other evidence from Dr. Ramirez's treatment records along with her own reported difficulties with prolonged standing and walking. (Doc. 21 at 23-24). Dr. Ramirez, however, did not rely on the evidence to which the Claimant points. Thus, the Claimant's argument essentially invites the Court to reweigh the evidence to find that Dr. Ramirez's opinion is supported by the record. As previously mentioned, the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner because, even if

the evidence preponderates against the Commissioner's decision, the reviewing court must affirm the decision if it is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. As discussed above, the ALJ's second reason for assigning little weight to Dr. Ramirez's opinion is supported by substantial evidence. Therefore, the Court rejects the Claimant's argument challenging the weight assigned to Dr. Ramirez's opinion.

### 3. Dr. Lombardi

The Claimant appears to argue that the ALJ erred by assigning little weight to Dr. Lombardi's March 20, 2015 opinion[11] because he was an unacceptable medical source. (Doc. 21 at 25-26). The Commissioner, on the other hand, argues that the ALJ properly considered each of Dr. Lombardi's opinions and that the weight she assigned to each opinion is supported by substantial evidence. (*Id*. at 34-35).

The Claimant began treating with Dr. Lombardi for neck and back pain in February 2014. (R. 511-12). The Claimant saw Dr. Lombardi on a weekly basis through April 2014. (R. 511-23). Thereafter, the Claimant saw Dr. Lombardi on a monthly to bi-monthly basis leading up to the alleged disability onset date. (R. 524-27). On January 28, 2015, Dr. Lombardi issued a letter to unidentified persons stating that he has been treating the Claimant for a sacroiliac sprain, and that "[d]ue to Mrs. Gray's condition she is not to stand for more than 1-2 hours." (R. 502).

The Claimant continued to treat with Dr. Lombardi on an almost monthly basis through April 2016. (R. 528-29, 1057-62). During this period of treatment, the Claimant continued to report

---

[11] As discussed in more detail below, Dr. Lombardi rendered two opinions – one on January 28, 2015, and a second on March 20, 2015. (R. 502; 534-37). The Claimant, however, limits her argument to the weight the ALJ assigned to the March 20, 2015 opinion. (Doc. 21 at 25-26). Thus, the Claimant has waived any argument with respect to the weight the ALJ assigned to Dr. Lombardi's January 28, 2015 opinion. *See Crawford*, 363 F.3d at 1161 (refusing to consider an argument that the claimant failed to raise before the district court).

various levels of neck and back pain, however her pain levels steadily decreased over time. (*Id.*). On examination, Dr. Lombardi routinely observed fixation and moderate to severe spasms at various locations in the Claimant's spine. (*Id.*). Dr. Lombardi routinely diagnosed the Claimant with, among other things, cervicalgia, thoracic spine pain, and sacroiliac segmental dysfunction. (*Id.*).

On March 20, 2015, Dr. Lombardi completed a questionnaire regarding the functional limitations caused by the Claimant's impairments. (R. 534-37). Dr. Lombardi opined that the Claimant can frequently lift and carry no more than 15 pounds; sit for no more than two hours in an eight-hour workday; stand for no more than one hour in an eight-hour workday; walk for no more than one hour in an eight-hour workday; never climb, crouch, or crawl; occasionally kneel; frequently balance and stoop; and is limited in her ability to reach, push, and pull.[12] (R. 534-36). Dr. Lombardi opined that the foregoing limitations stemmed primarily from the Claimant's pain and degenerative disc disease. (*Id.*).

The ALJ cited to both the January 28, 2015 and March 20, 2015 opinions, but erroneously summarized them as stating that the Claimant cannot work. (R. 31 (citing R. 502, 534-37)). Despite the ALJ's erroneous summary of Dr. Lombardi's opinions, the ALJ nevertheless appears to have considered the limitations set forth in each opinion. Thus, the Court finds the ALJ's error is harmless and not material to the ALJ's ultimate decision. *Cf. Bissinger v. Comm'r of Soc. Sec.*, Case No. 6:13-cv-1602-Orl-31GJK, 2014 WL 5093981, at *5-6 (M.D. Fla. Oct. 9, 2014) (finding that a misstatement of fact is not harmless if the misstatement is material or integral to the ALJ's ultimate decision).

The ALJ assigned Dr. Lombardi's opinions little weight for the following reasons:

---

[12] Dr. Lombardi did not specify the extent of Claimant's limited ability to reach, push, and pull. (*See* R. 536).

Although Dr. Lombardi is a treating provider, his opinion is not supported with relevant evidence. As noted above, there is no radiographic evidence of significant back degeneration, and the claimant's providers consistently note that the claimant has no signs of radiculopathy (Exs. 5F, 14F, 20F, 26F). Furthermore, the claimant reported only mild pain even at her chiropractic visits during the relevant period, generally between a level of 1 and 3 out of 10 (Exs. 5F, 29F). The claimant also showed improvement with treatment, requiring less than monthly visits to the chiropractor, and reported that these visits were helpful (*see* Exs. 5F, 29F). Dr. Lombardi is an unacceptable medical source.

(R. 31). Thus, the ALJ assigned little weight to Dr. Lombardi's opinions because: 1) they were inconsistent with the medical record, namely the lack of radiographic evidence of back degeneration and lack of radiculopathy; 2) they were inconsistent with the Claimant's routine reports of mild pain; 3) they were inconsistent with the reduced frequency of treatment; and 4) because Dr. Lombardi is not an acceptable medical source. (*Id.*).

The Claimant only challenges one of the ALJ's articulated reasons for assigning little weight to Dr. Lombardi's opinions – that he is not an acceptable medical source. (Doc. 21 at 25-26).[13] This argument is unpersuasive. At the time the Claimant applied for disability benefits, a chiropractor was not an "acceptable medical source" under the applicable regulations. 20 C.F.R. § 404.1513(d) (2016). Instead, a chiropractor was considered an "other source," whose opinion is not entitled to any special deference. *Id.*; *see Bruton v. Comm'r of Soc. Sec.*, Case No. 6:16-cv-1209-Orl-37DCI, 2017 WL 9362923, at *7 (M.D. Fla. Aug. 25, 2017) *report and recommendation adopted by*, 2017 WL 4174314 (M.D. Fla. Sept. 21, 2017).[14] While a chiropractor is considered

---

[13] The Court finds that the Claimant has waived any challenge to the ALJ's first three reasons for assigning little weight to Dr. Lombardi's opinions. *See Crawford*, 363 F.3d at 1161 (refusing to consider an argument that the claimant failed to raise before the district court).

[14] A chiropractor is still not considered an acceptable medical source under the current regulations. 20 C.F.R. § 404.1502(a).

an "other source," an ALJ may consider the opinion of an "other source" to show the severity of a claimant's impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d) (2016). When considering opinion evidence from an "other source," an ALJ must use the same factors used to weigh the opinions from acceptable medical sources. SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006). "An ALJ generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a subsequent reviewer to follow the ALJ's reasoning when such opinions may have an effect on the outcome of the case." *Santiago v. Colvin*, Case No. 8:14-cv-2779-T-TBM, 2016 WL 7428217, at *6 (M.D. Fla. Mar. 31, 2016) (citing SSR 06-03p, 2006 WL 2329939, at *6); 20 C.F.R. § 404.1527(f)(2).

The record demonstrates that the ALJ properly considered Dr. Lombardi's decision, and the ALJ was not required to accord his opinions any special deference. *Bruton*, 2017 WL 9362923, at *7. Moreover, the ALJ clearly articulated several reasons why she did not afford Dr. Lombardi's opinions much weight, and each of those reasons is supported by substantial evidence. (*See, e.g.*, R. 528-29, 683-718, 1057-62).[15] Thus, the ALJ did not err by assigning little weight to Dr. Lombardi's opinions, and did not err in finding that Dr. Lombardi was not an acceptable medical source. In light of the foregoing, the Court finds that the ALJ's decision to assign little weight to Dr. Lombardi's decision is supported by substantial evidence.

---

[15] It is not clear from the joint memorandum, but it appears that the Claimant is arguing that the ALJ also did not consider Dr. Lombardi's opinions as "other medical sources used to determine the severity of an impairment and the residual functional capacity." (Doc. 21 at 26). As discussed above, the Court finds that the ALJ did consider Dr. Lombardi's opinions, assigned them the weight they were due, and that the ALJ's reasons were supported by substantial evidence.

### 4. The ALJ's RFC Determination

The Claimant next argues that the ALJ's RFC determination is not supported by substantial evidence because she discredited all of the medical opinions of record. (Doc. 21 at 29). In other words, the Claimant suggests that the only way that an ALJ can reach an RFC determination is to base that finding on medical opinions – no other evidence will suffice. The Claimant cites no authority in support of this argument. (*Id*.).[16]

The Commissioner argues that the ALJ properly considered the record evidence in reaching her RFC determination and was not required to base that determination on a medical opinion. (*Id*. at 35-36 (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007)).

The mere fact the ALJ assigned little weight to each medical opinion does not undermine the ALJ's RFC determination. The Claimant has failed to cite any authority – and the Court is unaware of any – creating a rigid requirement that the ALJ's RFC determination must be supported by a medical opinion. Instead, it is axiomatic that the ALJ – not a physician – is tasked with determining a claimant's RFC, 20 C.F.R. § 404.1546(c), and, in doing so, must consider "all of the relevant medical and other evidence" of record, 20 C.F.R. § 404.1545(a)(3). Thus, while an ALJ may often rely on medical opinions when determining a claimant's RFC, there is nothing requiring the ALJ to do so, as long as his or her decision is supported by substantial evidence. *See Castle*,

---

[16] The Claimant's has arguably waived this perfunctory argument. *See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, at 777 n.2 (11th Cir. 2016) (stating that the claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 F. App'x 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

557 F. App'x at 853 (stating that despite discounting the one medical opinion in the record, "the ALJ did not 'play doctor' in assessing [the claimant's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant's] RFC."); *Green*, 223 F. App'x at 923 (finding that the ALJ's RFC determination based on remaining evidence did not constitute reversible error following the ALJ's decision to discredit the only physician's opinion on the plaintiff's ability to work as inconsistent with the objective medical evidence); *Jackson v. Colvin*, Case No. 8:14-cv-1159-T-TGW, 2015 WL 12844406, at *4 (M.D. Fla. July 16, 2015) (stating that an ALJ's RFC finding "need not be based on a physician's opinion of the plaintiff's functioning"); *Gregory v. Astrue*, Case No. 5:07-cv-19-Oc-GRJ, 2008 WL 4372840, at *8 (M.D. Fla. Sept. 24, 2008) ("A medical opinion is . . . not required to validate a RFC finding by the ALJ."). Here, the ALJ had ample evidence from which to determine the Claimant's RFC and the Claimant has otherwise failed to show that the ALJ's RFC determination is not supported by substantial evidence. Thus, the Court rejects the Claimant's argument challenging the ALJ's RFC determination.

## B. The Credibility Determination

The Claimant's second assignment of error asserts that the ALJ impermissibly cherry-picked parts of the record in determining that her testimony concerning pain and limitations was not entirely credible. (Doc. 21 at 37-38). Specifically, the Claimant contends that the ALJ improperly focused on periods during which her condition had improved without recognizing that the pain caused by her fibromyalgia waxes and wanes. (*Id*.). Thus, the Claimant argues that the ALJ's credibility determination was not supported by substantial evidence. (*Id*.).

The Commissioner characterizes the Claimant's argument as nothing more than boilerplate statements that fail to establish that the ALJ's credibility determination was not supported by

substantial evidence. (*Id*. at 38). To the contrary, the Commissioner argues that the reasons the ALJ articulated in support of her credibility determination both support her conclusion and are supported by substantial evidence. (*Id*. at 39-42).

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including the claimant's history, the medical records and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at § 404.1529(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Id*. at 1562.

In her decision, the ALJ summarized the Claimant's testimony[17] and found her statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent

---

[17] The Claimant does not challenge the accuracy of the ALJ's summary of her testimony. (*See* Doc. 21 at 36-38).

with the medical evidence and other evidence in the record for the reasons explained in [the] decision."  (R. 28).  In support, the ALJ provided the following reasoning throughout her step four analysis:

> As to her musculoskeletal and autoimmune conditions, the medical evidence of record reveals that the claimant generally reported and displayed only mild limitation in function, which are not consistent with the debilitating limitations alleged by the claimant. . . . Overall, even though the claimant noted subjectively worsening symptoms, including pain and fatigue which would prevent heavy exertional tasks, her stable examinations with intact strength, range of motion, stability, neurological function, and gait support a finding that the claimant retained the capacity for light exertion with the postural, manipulative, and environmental limitations noted above. . . .
>
> . . .
>
> Overall, the claimant's rare complaints of shortness of breath and normal work-ups on examinations and imaging do not support debilitating shortness of breath on exertion that would limit her to minimal standing and walking. . . .
>
> In addition to the medical evidence, other factors contained in the claimant's file are inconsistent with her disabling allegations and suggest that she is less limited. Despite her impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction.  The claimant admitted activities of daily living including going for walks, doing laundry, watching movies, and attending ballgames (Exs. 3E, 21F, 25F).  The claimant's ability to participate in such activities is inconsistent with her allegations of debilitating functional limitations. Although the undersigned has considered the nature of her impairments having "good days" and "bad days," or pain flares, even her reports to providers during the flares suggest significant retained function, consistent with light exertional capacity (*see* Exs. 1F, 14F, 21F, 25F, 29F).

(R. 28-30).

The ALJ properly considered the Claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms.  In doing so, the ALJ, considered the waxing and waning nature of her impairments, including her fibromyalgia.  (R. 30).  The ALJ found that the evidence – including the objective medical evidence, the Claimant's reports of pain, and the Claimant's activities of daily living – did not support a finding that the pain and other symptoms caused by her

fibromyalgia (and other impairments) precluded her from performing light work. (*Id.*). The ALJ did not cherry-pick through the Claimant's testimony and other record evidence.

Further, the Claimant has not otherwise shown that the ALJ's reasons for discrediting her testimony were not supported by substantial evidence. Thus, the Claimant has waived any challenge to those reasons. *See Crawford*, 363 F.3d at 1161 (refusing to consider an argument that the claimant failed to raise before the district court). Notwithstanding the waiver, the Court finds that the ALJ's reasons for discrediting the Claimant's testimony are supported by substantial evidence. As discussed above, while the Claimant reported pain, there were many instances where she reported either no or mild pain. (*See supra* pp. 7-8). Further, while there was some limited range of motion and mild tenderness observed in the Claimant's back throughout the relevant period, other aspects of the Claimant's physical examinations were generally unremarkable, including normal gait, range of motion in the lower extremities, and muscle strength. (*See supra* pp. 9). This evidence, as well as the evidence of the Claimant's activities of daily living, support the ALJ's credibility determination. Therefore, the Court finds that the Claimant has failed to show that the ALJ's credibility determination is not supported by substantial evidence.

## V.     Conclusion

Accordingly, it is **ORDERED** that:

1. The Commissioner's final decision is **AFFIRMED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and against the Claimant and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on August 20, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Lissette Labrousse
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Suite 1000, 10th Floor
500 East Broward Blvd
Ft. Lauderdale, FL 33394-3026